# UNITED STATES DISTRICT COURT
for the
Eastern District of North Carolina

FILED
APR 21 2017
PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY ___ DEP CLK

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Yahoo! Inc. Email Account
Extended_Reach08@yahoo.com

Case No. 5:17-MJ-1333-RN

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A.

located in the ___Northern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1347 | Health Care Fraud |
| 18 U.S.C. 287 | False, Fictitious, or Fraudulent Claims |
| 18 U.S.C. 1957 | Engaging in Monetary Transactions in Criminally Derived Property |

The application is based on these facts:
See attached Affidavit, incorporated herein.

☑ Continued on the attached sheet.
☐ Delayed notice of ___ days (give exact ending date if more than 30 days: ___) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

David Lange, Special Agent, HHS-OIG
*Printed name and title*

Pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure, the affiant appeared before me via reliable electronic means and was placed under oath.

Date: April 21, 2017
City & State: Raleigh, North Carolina

Robert T. Numbers, II United States Magistrate Judge

# AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, David Lange, Special Agent of the Department of Health and Human Service (HHS/OIG), being duly sworn, depose and say as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. This affidavit is made in support of an application for search warrants for all available subscriber information, stored electronic mail messages, and related information detailed in Attachment A to this affidavit, controlled by Yahoo! Inc. ("Yahoo"), for the user identified as Extended_reach08@yahoo.com on the server(s) of Yahoo, headquartered at 701 1st Avenue, Sunnyvale, California. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Yahoo! Inc. to disclose to the government records and other information in its possession pertaining to the subscribers or customers associated with these accounts.

2. AFFIANT, Special Agent David Lange, has been employed by the U.S. Department of Health and Human Services, Office of Inspector General, Office of Investigations (HHS-OIG-OI) for over 16 years. Affiant is currently assigned the responsibility of investigating cases involving criminal fraud against various programs funded by the United States Department of Health and Human Services, including the Medicare and Medicaid Programs. In my capacity as an investigator, I investigate white collar crimes that often involve the use of computers to commit violations of federal laws. I have gained experience regarding the use of computers and the Internet in criminal activity, and the investigation of such activities, through everyday work relating to these types of investigations.

3. This affidavit is based upon direct personal knowledge derived from the affiant's investigation, reports and investigation provided by other agencies closely related to this case, including investigators from the North Carolina Attorney General, Medicaid Investigations Division (MID), and information received from person(s) believed to be credible by the affiant. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

4. Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that violations of Health Care Fraud, in violation of Title 18, United States Code, 1347; False, Fictitious, or Fraudulent Claims, in violation of Title 18, United States Code, 287; and Engaging in Monetary Transactions in Property Derived

Affidavit of SA David Lange - Page 1

From Specified Unlawful Activity in violation of Title 18, United States Code, 1957 (collectively referred to herein and in Attachments as the "Subject Offenses") have been committed by Extended Reach Day Treatment for Children and Adolescents LLC (herein referred to as ERDT). Based on the facts set forth in this Affidavit, I respectfully submit that there is also probable cause to search the email account Extended_reach08@yahoo.com for the information described in Attachment B for evidence of these crimes.

5. As part of a joint investigation with the MID your affiant has been investigating the activities of ERDT. Your affiant believes that ERDT has:

    a. Executed a scheme by which it billed the Medicaid Program for enhanced mental health and behavioral health services that were not performed;

    b. Practiced substantial aberrant practices, including abuse of the Medicaid Program through alleged fraudulent claim submissions and fraudulent practices through the use of altered or forged documentation.

## THE MEDICAID PROGRAM

6. Title 19, The North Carolina Medicaid Program (Medicaid) is a state-administered health care benefit program partially funded by federal money and designed to provide medical assistance for low-income families and children. The Centers for Medicare and Medicaid Services (CMS), an agency of United States Department of Health and Human Services, administers the Medicaid program at the federal level. An individual qualified to receive this publicly funded assistance is referred to as a recipient. For recipients, Medicaid functions like a medical insurance plan, which defrays the cost of receiving covered and medically necessary services. The North Carolina Department of Health and Human Services (DHHS), Division of Medical Assistance (DMA) has been the administering state agency for the Medicaid Program in North Carolina since 1978. Managed care organizations (MCO) were created to administer and oversee the mental health services portion of Medicaid in April 2012. Prior to the creation of MCOs, there were local management entities.

7. Computer Sciences Corporation (CSC), recently joined with SRA International and formed CSRA, and is the fiscal agent for Medicaid. CSRA is responsible for processing and paying Medicaid claims for non-mental health providers commonly referred to as professional claims. HP Enterprise Services (HP) was the fiscal agent for Medicaid before CSRA. The MCOs are responsible for processing and paying Medicaid claims for mental health providers, commonly referred to as encounter claims, in their respective geographic areas. In paying claims, DMA, CSRA, and MCOs retain and store Medicaid claims, payment records, and correspondence to and from providers of medical services who have participated in Medicaid.

Affidavit of SA David Lange - Page 2

8. In Medicaid, a "provider" is defined as any individual or entity furnishing Medicaid services under a provider agreement with the Medicaid Agency (42 CFR 400.203). For a provider to obtain reimbursement from Medicaid for providing services to a Medicaid recipient, the provider fills out a claim form with the provider's name, address, provider number, the patient's name, Medicaid identification number, the date of service, a brief description of the charges, the provider's signature, and date of billing. The provider selects the most specific billing code that accurately and completely describes the procedure, product or service provided. Typically, mental health services shall be billed by the provider using the Current Procedural Terminology (CPT) or the Health Care Procedure Coding System (HCPCS).

9. The provider then electronically submits the claim form to the MCO or CSRA. MCO operations are located in 7 geographic areas throughout the state. CSRA's operations are located in Raleigh, North Carolina. MCOs and CSRA rely upon the information contained on the claim form to pay the claim as submitted. MCOs and CSRA issue reimbursement checks, or alternatively, transmit payments via electronic funds transfer to the provider.

10. Every provider who participates in Medicaid must apply for and be assigned a unique National Provider Identifier (NPI). The NPI is a unique identification number for covered health care providers. Covered health care providers and all health plans and health care clearinghouses must use the NPIs in the administrative and financial transactions adopted under the Health Insurance Portability and Accountability Act of 1996, Pub.L.No. 104-191, 110 Stat. 1936 (1996) (HIPAA). The NPI is a 10-position, intelligence-free numeric identifier (10-digit number). This means that the numbers do not carry other information about healthcare providers, such as the state in which they live or their medical specialty. The NPI can be used to identify claims filed by, and monies paid to, a certain provider.

11. Each Medicaid recipient is assigned a unique identification number by Medicaid and can be identified by reference to their unique identification number. Further, individuals who accept Medicaid benefits agree that their records may be reviewed by Medicaid and Medicaid fraud investigators to determine whether services were rendered and billed as defined under Administrative Code of North Carolina 10A NCAC 22F.0104, Section (e)(3) and (4).

12. Under Medicaid rules, each claim that a provider submits is considered a separate claim under the provider's agreement. As defined under Administrative Code of North Carolina 10 NCAC 22F.0107, the provider's agreement states that the provider agrees to keep such records for a minimum of six years from the date of service, as are necessary to disclose fully the extent of services provided to individuals under the state's Medicaid program and to furnish information regarding any payments claimed for providing such services as the State Agency or Department of Health and Human Services (DHHS) may request. The provider further agrees to accept, as payment in full, the amount paid by Medicaid for those claims submitted for payment under that program, with the exception of authorized deductibles and co-insurance.

Affidavit of SA David Lange - Page 3

13. Upon enrollment, providers are directed to the DHHS website for online policies, manuals, and forms that generally describe the requirements to participate as a provider in the Medicaid program. Providers are directed to the DHHS website to periodically receive newsletters/bulletins advising them of additional requirements for participation and instructions on what services are covered or not covered by Medicaid.

## MEDICAID ENHANCED MENTAL AND OUTPATIENT BEHAVIORAL HEALTH REGULATIONS

14. For enhanced mental health services Medicaid rules require that a recipient must have a current diagnosis reflecting the need for treatment. All covered services must be medically necessary for meeting specific preventive, diagnostic, therapeutic, and rehabilitative needs of the recipient. The needs are evidenced by the presence of a diagnosable mental, behavioral, or emotional disturbance with documentation of symptoms and effects reflected in the Person-Centered Plan (PCP) and the Comprehensive Clinical Assessment (CCA). A signed service order is then completed and signed by the client, parent, or guardian, and may be signed by a Medical Doctor (MD), Doctor of Osteopathic Medicine (DO), Licensed Psychologist, Nurse Practitioner (NP), or Physician Assistant (PA). A service order is necessary for all enhanced services such as Intensive In-Home (IIH), Substance Abuse Intensive Outpatient Program (SAIOP), Substance Abuse Comprehensive Outpatient Treatment (SACOT), Child and Adolescent Day Treatment. Outpatient behavioral health services require prior approval beyond a certain number of visits such as psychotherapy and psychiatric services or may require clinical supervision. Physicians bill appropriate CPT codes under the evaluation and management codes (E/M). E/M codes are not specific to mental health and are not subject to prior approval. However, these codes are subject to the annual visit limit for adults. For recipients under the age of 21 there is no limit to E/M codes allowed per year.

15. The PCP planning is a process of determining real-life outcomes with individuals and developing strategies to achieve these outcomes. The PCP provides for the individual with the disability to assume an informed and in-command role for life planning and for treatment, service, and support options. Before any services can be billed to Medicaid, a written PCP for the delivery of medically necessary services must be in place.

16. The CCA reflects the presenting problems, symptoms, personal history, medical history, diagnosis, and recommended services for treatment.

17. The service order is a mechanism to demonstrate medical necessity for a service and is based on an assessment of each recipient's needs. The service order may be written by a MD, DO, NP, or PA.

18. For each date of service provided to a recipient, a service note is required to document how the service was provided, by whom, and the length of time for the service.

Affidavit of SA David Lange - Page 4

19. Medicaid shall not cover procedures, products, and services when the recipient does not meet the eligibility requirements, or does not meet the medical necessity criteria, or the procedure, product, or service unnecessarily duplicates another provider's procedure, product, or service, or the procedure, product, or service is experimental, investigational, or part of a clinical trial.

## INVESTIGATIVE BACKGROUND

20. The Medicaid Investigations Division receives referrals from MCOs when the MCO investigation results in a credible evidence of fraud. All of the MCOs conduct thorough investigations including sending Explanation of Benefit (EOB) statements to Medicaid clients with a request to return the EOB indicating if the service billed to the Medicaid program was rendered or not rendered, interviewing former and current employees, and reviewing all client documents to ensure standards were met.

21. The Medicaid Investigations Division received a referral, from multiple sources, including the MCOs, against ERDT, and after conducting interviews with MCO investigative personnel, former ERDT employees, and Medicaid recipients, a criminal case was opened on January 7, 2014, based on substantial evidence of fraud and abuse of the Medicaid program.

22. ERDT registered with the North Carolina Secretary of State on December 17, 2007, a principal office located at 5320 Blanchettte Street, Hope Mills, North Carolina, 28348. ERDT filed the first annual report with the North Carolina Secretary of State on October 12, 2009, listing the managing members as Andrea Hall and Joe Hall with a change to the principal office to 3909 Barclay Way, Wade, North Carolina 28395. ERDT has since moved their principal office location to 302 Bradford Avenue, Fayetteville, North Carolina 28301. The Halls have since divorced and on July 15, 2015, the amended annual reports listed Andrea Boatman as the chief executive officer and Connie Boatman as a member.

23. ERDT received a mental health license to operate a mental health facility on April 22, 2008. ERDT received accreditation from The Joint Commission on May 6, 2009.

24. ERDT applied to and was enrolled in the North Carolina Medicaid Program on November 12, 2009, as a provider of health care services to the residents of North Carolina in multiple counties. At one time, ERDT had 3 NPI numbers with one tax identification number of 77-0712573. ERDT operated in Cumberland, Bladen, Duplin, Hoke, Harnett, Robeson, Scotland, and Wayne counties . ERDT was certified as a Critical Access Behavioral Health Agency (CABHA) effective January 1, 2011, to offer an array of mental health behavioral services including but not limited to community support, diagnostic assessment, outpatient therapy, intensive in-home, medication management, psychosocial rehabilitation, psychotherapy, and substance abuse intensive outpatient.

Affidavit of SA David Lange - Page 5

25. ERDT provided these services to a vulnerable population and resorted to billing the Medicaid Program for services not rendered or inflated the hours of services for services that were provided. False service notes were created to cover the services not rendered or written in a manor to elaborate the service note wording in an attempt to justify the falsified length of time billed to the Medicaid Program.

26. Your Affiant and/or members of the Medicaid Investigations Division have conducted interviews with parents and guardians of Medicaid recipients regarding services billed by ERDT. Recipients are only identified by first name/last name initials for privacy concerns.

27. Your Affiant and/or members of the Medicaid Investigations Division have also conducted interviews with former ERDT employees Lisa Sherlock, Lindsey Petriello, Nikkia Bell, Tamika Gamble, Ebony Cox, Donna Mitchell-Barnes, Monaye Welton and Dr. Amer Qureshi.

### STATEMENT OF PROBABLE CAUSE TO BELIEVE THAT THE SUBJECT OFFENSES HAVE BEEN COMMITTED

a) **Former Employee Interviews:**

28. All of the former employees interviewed told investigators that ERDT used a software program called Clinic Tracker to schedule appointments and store client medical records. Clinic Tracker provided digital back-up for ERDT's electronically stored medical files. Schedules for mental health and outpatient behavioral appointments and services were set up as templates in Clinic Tracker. The templates were pre-filled with appointment/service dates and start and stop times. Service notes were created and stored in Clinic Tracker.

29. Former employee Lisa Sherlock was hired by ERDT in 2013 and told investigators that employees were instructed to document day treatment service notes to reflect 5 hours of services when, in fact, children were not present for more than 3 hours. Lisa Sherlock stated the Medicaid Program was billed for more than the 3 hours of actual day treatment services, totaling 5 hours of service which included time the children spent in transportation, to and from the facility, snack time and play time. The day treatment service policy definition states that transportation, snack time and play time are not billable because they are already factored into the reimbursement rate. Lisa Sherlock stated that ERDT employed "foreign note writers" which were people from India and the Phillipines, named "Annie," "Rachel," and an unnamed male.

30. Former employee Lindsey Petriello was hired by ERDT in 2012 and told investigators that employees were instructed to document day treatment service notes to reflect 5 hours of services when, in fact, children were not present more than 2 ½ to 4 hours. Lindsey Petriello stated the Medicaid Program was billed for day treatment services that included time the children spent in transporation, to and from the facility, and other non-billable

Affidavit of SA David Lange - Page 6

time such as snack time and play time. Lindsey Petriello stated that ERDT employed note writers from the Phillipines named "Roy," "Annie," and "Rachel." Lindsey Petriello stated that she recalled an email from "Roy" whereby "Roy's" real name was identified as Mohammed.

31. Former employee Nikkia Bell was hired by ERDT in 2012 told investigators that the "true" day treatment program provided by ERDT consisted of 1 ½ hours of hands on instruction, however the Medicaid Program was billed for 5 or 6 hours. Nikkia Bell stated that Andrea Hall employed note writers from India and the Phillipines to write day treatment service notes for dates when no services were provided. Nikkia Bell stated that Andrea Hall provided the list of missing service dates to "Annie" so she could make up service notes. According to Nikkia Bell, "Annie" also completed clinical assessments which she was not qualified to do. Nikkia Bell stated that "Mohammed" handled the billing for ERDT to the Medicaid Program.

32. Former employee Tamika Gamble was hired by ERDT in 2012 and told investigators that the children who attended the day treatment program at ERDT were never present for 6 hours, however the Medicaid Program was billed for 6 hours. Tamika Gamble stated that Andrea Hall hired "Mohammed," from India, to submit billing to the Medicaid Program. Tamika Gamble stated that Andrea Hall hired "Annie" and "Rachel," from "overseas" to write PCPs. Tamika Gamble stated that it was common for children in the day treatment program to not meet the Medicaid service definition for day treatment services.

33. Former employee Ebony Cox was hired by ERDT in 2012 and told investigators that the ERDT day treatment program was offered daily for 2 ½ hours, however Andrea Hall instructed Ebony Cox to ensure the day treatment service notes were written, for billing purposes, based on 6 hours. The note should justify the extra time as case management or medication management. Ebony Cox stated the fraudulent 6 hours billed to the Medicaid Program included elaborate wording to attempt to justify 6 hours and included the time spent in transportation and snack time. Ebony Cox stated that ERDT employed "remote workers" from foreign countries such as "Mohammed" who handled the billing to the Medicaid Program. Ebony Cox stated that "Annie" wrote treatment notes which were in turn submitted for billing to the Medicaid Program.

34. Former employee Donna Mitchell-Barnes was hired by ERDT in 2014 and is a licensed physician assistant. Donna Mitchell-Barnes told investigators that the ERDT day treatment program had no structure. Investigators showed Donna Mitchell-Barnes a list of recipient names that indicated she provided medication management services that were billed to the Medicaid Program. Donna Mitchell-Barnes identified several submissions as fraudulent because she did not know the recipients and had not provided medication management services to those recipients. Donna Mitchell-Barnes stated that she questioned Andrea Hall after seeing a schedule of recipient names in Clinic Tracker that indicated they were clients of Donna Mitchell-Barnes. Donna Mitchell-Barnes stated that the recipient names listed in Clinic Tracker were not her clients and she did not provide services to those clients. Donna Mitchell-Barnes believed that billing to the Medicaid

Program was submitted from the schedule in Clinic Tracker rather than from the actual services provided . Donna Mitchell-Barnes stated "a guy in India does the billing." Donna Mitchell-Barnes provided e-mail communications from Andrea Hall using the e-mail address Extended_reach08@yahoo.com

35. Former employee Monaye Welton was hired by ERDT in 2009 but ERDT had to close in August of 2011 because they had not obtained CABHA status. The billing to the Medicaid Program also stopped in August of 2011. Monaye Welton stated that ERDT did not reopen until 2012. The billing to the Medicaid Program began in April of 2012. Monaye Welton was rehired in February of 2013 and told investigators that Clinic Tracker was already in use when she returned and "Rachel" was employed by ERDT in 2012. Monaye Welton told investigators that Andrea Hall required employees to write a 2 hour case management note for children even though they were absent from the day treatment program. Monaye Welton stated that Clinic Tracker had a pre-filled schedule for all services provided by ERDT, with the number of service hours pre-filled as well. Monaye Welton stated that "Roy" from the Phillipines changed the hours in Clinic Tracker to maximize the billing and then transmitted the record to Trizetto, a clearing house, who submitted the billing to the Medicaid Program. Monaye Welton stated that she was present with Andrea Hall in April of 2013 when Andrea Hall hired "Roy" using the Internet. Monaye Welton stated that Andrea Hall communicated via e-mail with "Roy."

36. Former employee and contract psychiatrist Dr. Amer Qureshi was hired by ERDT in 2013 and told investigators that he worked at ERDT one day a week, on Thursdays, and provided medication management services. Dr. Amer Qureshi stated that he provided services that fall under the E/M codes of 99213 or 99214. Psychotherapy services are billed under procedure codes 90833, 90834, 90836, 90837, and 90847. ERDT billed the Medicaid Program under these psychotherapy codes as if Dr. Amer Qureshi performed the services. Investigators showed Dr. Amer Qureshi a list of recipient names that indicated he provided psychotherapy services and were billed to the Medicaid Program. Dr. Amer Qureshi stated that he did not provide any psychotherapy services and did not work on the dates listed. Dr. Qureshi provided investigators with a copy of the dates he worked for ERDT. Dr. Amer Qureshi stated that he supervised employees, like Donna Mitchell-Barnes, for medication management services; he did not provide supervision for provisionally-licensed therapists for psychotherapy.

**b) Recipient Interviews:**

37. Recipient T.D. attended the day treatment program at ERDT for a brief amount of time estimated by his guardian as a maximum of 14 times. T.D. had autism and had exhibited violent behaviors requiring hospitalization on multiple occasions in a psychiatric residential treatment facility. ERDT billed the Medicaid Program while T.D. was in the care of staff and physicians at the psychiatric residential treatment facility. The Medicaid Program was billed by ERDT for $8,913.56 for services not rendered to T.D.

Affidavit of SA David Lange - Page 8

due to the fact that T.D. was in a psychiatric residential treatment facility and did not receive day treatment services.

38. Recipient M.N. attended the day treatment program at ERDT sporadically and had been diagnosed with post-traumatic stress disorder (PTSD), as well as Schizophrenia, ADHD, and bipolar, according to M.N.'s adoptive mother. ERDT billed the Medicaid Program while M.N. had been hospitalized in a psychiatric residential treatment facility. The Medicaid Program was billed by ERDT for $2,073.06 for services not rendered to M.N. due to the fact that M.N. was in a psychiatric residential treatment facility and did not receive day treatment services.

39. Recipient K.M. received intensive in-home services from ERDT until being hospitalized in a psychiatric residential treatment facility in Butner, North Carolina. ERDT billed the Medicaid Program while K.M. had been hospitaled in a psychiatric residential treatment facility. The Medicaid Program was billed by ERDT for $4,961.34 for services not rendered to K.M. due to the fact that K.M. was in a psychiatric residential treatment facility and did not receive intensive in-home services.

40. Recipient K.P. attended the day treatment program at ERDT before he moved to South Carolina in December of 2014, according to his mother. The Medicaid Program was billed by ERDT for $5,653.80 for services from January 3, 2015, up through February 3, 2015. Day treatment services were not rendered to K.P. due to the fact that K.P. moved to South Carolina in December 2014, according to K.P.'s mother.

41. Recipient E.H. attended the day treatment program at ERDT one time and refused to return. E.H. had exhibited behaviors which required hospitalization in various psychiatric residential treatment facilities in Virginia and North Carolina according to E.H.'s mother. E.H. received multisystemic therapy services from a provider in Fayetteville, North Carolina, whereby an ERDT employee attended monthly team meetings to hear about E.H.'s progress. Attendance to the monthly team meetings is not a billable service under the service policy definition. The Medicaid Program was billed by ERDT for $16,961.40 for day treatment services not rendered to E.H. due to the fact that E.H. did not receive day treatment services.

42. Based upon interviews and analysis of the Medicaid billing from January 1, 2012 to the present, your affiant believes that fraudulent claims were submitted to the NC Medicaid Program for mental health and outpatient behavioral health services not rendered in excess of $800,000.00.

43. Based upon interviews and analysis of the Medicaid billing from January 1, 2012 to the present, your affiant believes that fraudulent claims were submitted to the NC Medicaid Program for medication management services not rendered by Dr. Amer Qureshi in excess of $308,948.20. Qureshi only worked one day per week for ERDT. Many of the medication management service claims submitted were for days that Qureshi was not working for ERDT.

Affidavit of SA David Lange - Page 9

c) **Corroborating Information and Evidence:**

44. Your affiant reviewed the bank records for ERDT and found numerous monetary transactions for personal use such as a down payment on Andrea Hall's residence, student loan payments, airlines, BMW car payments, hotel lodging, and beauty supply purchases.

45. A pole camera was utilized to observe hours of operation as well as duration of recipient services. The pole camera substantiated that no services were provided on holidays such as Labor Day 2014 and no recipients were seen at the ERDT facility after 6:30 p.m. ERDT billed the Medicaid Program for alleged day treatment services provided to 7 children on Labor Day 2014. Pole camera footage shows no activity at the ERDT facility except for a brief visit by Andrea Hall. Pole camera footage captured arrival/departure times for recipient daily visits which did not substantiate 6 hour durations of services.

46. Alliance MCO provided double billing reports where ERDT billed the Medicaid Program for day treatment services while the recipients were hospitalized in psychiatric residential treatment facilities.

**STATEMENT OF PROBABLE CAUSE TO BELIEVE THAT THE ACCOUNT EXTENDED_REACH08@YAHOO.COM WILL CONTAIN EVIDENCE OF THE SUBJECT OFFENSES**

In addition to the information concerning Extended_reach08@yahoo.com referenced in the preceding sections:

47. Former employee Donna Mitchell-Barnes provided copies of emails dated November of 2015 and January of 2016 from Andrea Hall from email account Extended_reach08@yahoo.com.

48. ERDT's North Carolina Division of Medical Assistance/NCTracks Medicaid Provider Enrollment Form dated March 31, 2010, listed the contact email address as Extended_reach08@yahoo.com To date, the DMA/NCTracks database shows Extended_reach08@yahoo.com as the contact email address for correspondence and communication. NCTracks regularly uses email as a form of communication with providers sending listserv up-dates, payment notifications, and when documents are available for review.

49. From a review of the forgoing documents the Yahoo e-mail account identified as Extended_reach08@yahoo.com was utilized regularly as part of ERDT's business, including its billing operation and communications with foreign note writers and "Roy." Electronically stored communications which purport to explain ERDT's rationale

Affidavit of SA David Lange - Page 10

for billing Medicaid in the manner it did, or which otherwise demonstrate knowledge by ERDT of the amount and nature of its billings to the Medicaid program, all constitute direct evidence of the fraudulent activity.

## SEARCH PROCEDURE

50. In order to ensure that agents search only those computer accounts and/or files described in Attachments A and B, this affidavit and application for search warrant seeks authorization to permit employees of Yahoo to assist agents in the execution of the requested warrant. To further ensure that agents executing the warrant search only those computer accounts and/or files described in Attachments A and B, and its contents, the following procedures will be used:

    a. The search warrant will be presented to Yahoo personnel who will be directed to isolate those accounts and files described in Attachment A and B, including an exact duplicate of all information stored in the computer accounts and files described in Attachment A and B;

    b. Yahoo employees will provide the exact duplicate in electronic form of the accounts and files described in Attachment A and all information stored in those accounts and files to the agent who serves this search warrant;

    c. Law enforcement personnel will thereafter review the information stored in the accounts and files received from Yahoo employees and then identify and copy the information contained in those accounts and files which are authorized to be further copied by this search warrant; and

    d. Law enforcement personnel will then seal the original duplicate of the accounts and files received from Yahoo employees and will not further review the original duplicate absent an order of the Court.

## BACKGROUND REGARDING COMPUTERS, THE INTERNET AND E-MAIL

51. I have had training in the investigation of computer-related crimes. Based upon my training and experience, I know the following:

    a. The term "computer" as used herein is defined in 18 U.S.C. § 1030(e)(1), and includes an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device;

    b. The internet is a worldwide network of computer systems operated by governmental entities, corporations, and universities. In order to access the internet, an individual computer user must subscribe to an access provider, which

Affidavit of SA David Lange - Page 11

operates a host computer system with direct access to the internet. The world wide web ("www") is a functionality of the internet which allows users of the internet to share information;

c. With a computer connected to the internet, an individual computer user can make electronic contact with millions of computers around the world. This connection can be made by any number of means, including modem, local area network, wireless and numerous other methods;

d. E-mail is a popular form of transmitting messages and/or files in an electronic environment between computer users. When an individual computer user sends e-mail, it is initiated at the user's computer, transmitted to the subscriber's mail server, and then transmitted to its final destination. A server is a computer that is attached to a dedicated network and serves many users. An e-mail server may allow users to post and read messages and to communicate via electronic means;

e. With a computer connected to the internet, an individual computer user can make electronic contact with millions of computers around the world. Many individual computer users and businesses obtain their access to the internet through businesses known as Internet Service Providers ("ISPs"). ISPs provide their customers with access to the internet using telephone or other telecommunications lines; provide internet e-mail accounts that allow users to communicate with other internet users by sending and receiving electronic messages through the ISPs' servers; remotely store electronic files on their customers' behalf; and may provide other services unique to each particular ISP;

f. The ISPs maintain records pertaining to the individuals or companies that have subscriber accounts with the ISP. Those records may include identifying and billing information, account access information in the form of log files, e-mail transaction information, posting information, account application information, Internet Protocol ("IP") addresses,[1] and other information both in computer data format and in written record format.

---

[1] IP addressing is a system that is integral to the process of routing data through the internet. Each IP address has specific components and follows a basic format. Each host computer on a network is assigned a unique 32-bit logical address that is divided into two main parts: the network number and the host computer number. The network number identifies the originating network and must be assigned by the Internet Network Information Center ("InterNIC") if the network is to be part of the worldwide internet. An ISP obtains blocks of network addresses from InterNIC and can itself assign address space as necessary. The host number identifies a specific computer host on a network and is assigned by the local network administrator, which may then be traced back to a specific personal computer based on access time log comparisons.

Affidavit of SA David Lange - Page 12

## ELECTRONIC INFORMATION

52. Subscribers obtain an account by registering with Yahoo! Inc. During the registration process, Yahoo! Inc. asks subscribers to provide basic personal information. Therefore, the computers of Yahoo! Inc. are likely to contain stored electronic communications (including retrieved and unretrieved e-mail for Yahoo! Inc. subscribers) and information concerning subscribers and their use of Yahoo! Inc. services, such as account access information, e-mail transaction information, and account application information.

53. In general, an e-mail that is sent to a Yahoo! Inc. subscriber is stored in the subscriber's "mail box" on Yahoo! Inc. servers until the subscriber deletes the e-mail. If the subscriber does not delete the message, the message can remain on Yahoo! Inc. servers indefinitely.

54. When the subscriber sends an e-mail, it is initiated at the user's computer, transferred via the Internet to Yahoo! Inc.'s servers, and then transmitted to its end destination. Yahoo! Inc. often saves a copy of the e-mail sent. Unless the sender of the e-mail specifically deletes the e-mail from the Yahoo! Inc. server, the e-mail can remain on the system indefinitely.

55. A sent or received e-mail typically includes the content of the message, source and destination addresses, the date and time at which the e-mail was sent, and the size and length of the e-mail. If an e-mail user writes a draft message but does not send it, that message may also be saved by Yahoo! Inc. but may not include all of these categories of data.

56. A Yahoo! Inc. subscriber can also store files, including e-mails, chat logs, address books, contact or buddy lists, calendar data, pictures, and other files, on servers maintained and/or owned by Yahoo! Inc.

57. Subscribers to Yahoo! Inc. might not store on their home computers copies of the e-mails stored in their Yahoo! Inc. account. This is particularly true when they access their Yahoo! Inc. account through the web, or if they do not wish to maintain particular e-mails or files in their residence.

58. In general, e-mail providers like Yahoo! Inc. ask each of their subscribers to provide certain personal identifying information when registering for an e-mail account. This information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative e-mail addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number).

59. E-mail providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the

account is inactive or closed), the methods used to connect to the account (such as logging into the account via Yahoo! Inc.'s website), and other log files that reflect usage of the account. In addition, e-mail providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the e-mail account.

60. In some cases, e-mail account users will communicate directly with an e-mail service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. E-mail providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

61. In my training and experience, evidence of who was using an e-mail account may be found in address books, contact or buddy lists, e-mail in the account, and attachments to e-mails, including pictures and files.

62. Your affiant is aware that Yahoo!, as a part of its standard business practices, allows users to create and maintain data on its servers in various folders and forms. While users have the ability to delete content, Yahoo, upon request of the Government, takes measures to ensure that any electronic data on target accounts is preserved pending acquisition of a search warrant.

63. Upon discovery of the target e-mail accounts in conjunction with the execution of the prior search warrant, your affiant, through others, initiated a preservation request with Yahoo! for the target e-mail accounts, acknowledgement of which was received.

64. Based upon the foregoing, probable cause exists to believe that evidence of the target offenses will be found in the target e-mail accounts at Yahoo! Inc.

## MANNER OF SEARCH

65. I anticipate executing the warrant upon Yahoo! Inc. under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Yahoo! Inc. to search the account identified in Attachment A and disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of this information, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

Affidavit of SA David Lange - Page 14

## CONCLUSION

66. Based on the forgoing, I request that the Court issue the proposed search warrant.

67. This Court has jurisdiction to issue the requested warrant to Yahoo! Inc. because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

68. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of the warrant to Yahoo! Inc.

David Lange, Special Agent
U.S. Department of Health and Human Services
Office of Inspector General

Pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure, the affiant appeared before me via reliable electronic means, was placed under oath, and attested to the contents of this written affidavit.
Dated: April 21, 2017

Robert T. Numbers, II
United States Magistrate Judge

# ATTACHMENT A

The place to be searched is information associated with the Yahoo! Inc. account Extended_reach08@yahoo.com that is stored at a premises controlled by Yahoo! Inc.

Yahoo! Inc. indicates that it receives service of law enforcement process via email at lawenforcement-request-delivery@yahoo-inc.com. Yahoo! Inc. also accepts service of law enforcement process at link: https://support.google.com/legal-investigations/contact/LERS.

Yahoo! Inc. also publishes their headquarter's address as:

> Yahoo! Inc.
> 701 1st Avenue
> Sunnyvale, California

Affidavit of SA David Lange - Page 16

# ATTACHMENT B

## ITEMS TO BE SEIZED / TARGET EVIDENCE

This warrant authorizes (i) the search of the property identified in Attachment A for only the following and (ii) authorizes the seizure of the items listed below only to the extent they constitute the evidence of the Subject Offense(s), defined as follows:

a) Health Care Fraud, in violation of Title 18, United States Code, Section 1347;

b) False, Fictitious, or Fraudulent Claims, in violation of Title 18, United States Code, Section 287; and

c) Engaging in Monetary Transactions in Property Derived From Specified Unlawful Activity in violation of Title 18, United States Code, 1957.

Subject to the foregoing, this warrant authorizes the search of the place described in Attachment A as follows**:**

## I. INFORMATION TO BE DISCLOSED BY YAHOO! INC.

To the extent that the information is within the possession, custody, or control of Yahoo! Inc. Yahoo! Inc. is required to disclose the following information to the government for the account identified as **Extended_reach08@yahoo.com** from January 1, 2012 to present:

- The contents of all e-mails stored in the account, including copies of e-mails sent to and from the account, draft e-mails, deleted e-mails, the source and destination addresses associated with each e-mail, the date and time at which each e-mail was sent, and the size and length of each e-mail;

- All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the types of service utilized, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-

Affidavit of SA David Lange - Page 17

mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

- All records or other information stored by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

- All records pertaining to communications between Yahoo! Inc. and any person regarding the account, including contacts with support services and records of actions taken;

- All records and information regarding locations where the account was accessed, including all data stored in connection with location services;

II. **INFORMATION TO BE SEIZED BY THE GOVERNMENT**

For the account listed in Section I, the government is authorized to sieze evidence of the Subject Offenses, including but not limited to the following:

- Substantive email content relating to creation or submission of claims to health care benefit programs;

- Evidence concerning the identity of the person(s) who created or used the Yahoo! account, including records that help reveal the whereabouts of such person(s) during the time period referenced above;

- Evidence indicating how and when the account was accessed or used, including the contents of said access and use, to determine the chronological and geographic context of account access, use and events relating to the Subject Offenses, and the account subscriber;

- Any records pertaining to the means and source of payment for services (including any credit card or bank account number or digital money transfer account information); and

- Evidence indicating the subscriber's state of mind as it relates to the crime under investigation, including but not limited to deleted data, preserved data, and internet search records.

- Any records pertaining to financial and business operations, recruiting of clients, filing of medical claims, patient treatment, employment and personnel matters, audits by government associated entities, and the exchange of ERDT employee concerns related to clients.

Affidavit of SA David Lange - Page 18